**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

ANDREW MORGAN, on behalf of himself )
and all other Plaintiffs similarly situated )
known and unknown, )
                             )
       Plaintiff, )
                             )    Case No.:  05 C 5795
    v. )
                             )    Magistrate Judge Nolan
SPEAKEASY, LLC, THE ROOM OF )
CHICAGO d/b/a SOUTH, and JODI )
ANDRE, individually, )
                             )
       Defendants. )

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
HIS MOTION FOR SUMMARY JUDGMENT ON LIABILITY WITH
RESPECT TO HIS FLSA, IMWL, AND UNJUST ENRICHMENT CLAIMS**

**I.    INTRODUCTION**

    Plaintiff was briefly employed as a waiter by Defendants between June 14, 2005 and September 18, 2005. In certain workweeks throughout his employment, Plaintiff was not paid any wages by Defendants. Instead, Plaintiff's sole form of compensation came from tips paid to him by Defendants' customers. After Plaintiff's own efforts to recover his owed wages failed, this lawsuit followed.

    Plaintiff is entitled to judgment on liability on his Fair Labor Standards Act and Illinois Minimum Wage Law claims because the undisputed facts establish that he was not paid the federal or state minimum wage rate for all time he worked for Defendants in individual work weeks. In addition, Defendants are not entitled to take a tip credit against Plaintiff's minimum wages because 1) Plaintiff was paid a regular rate of $0.00 per hour, a rate less then both the applicable federal and state tip credit rates, 2) was not notified by Defendants at the time of his employment that he would be paid less than the minimum wage rate, and 3) Plaintiff was not allowed to retain all the tips he earned each week. Instead, Plaintiff was forced to share his tips with Defendants and Defendants' managers. As a result, Defendants' tip pool was unlawful and

1

Defendants are not entitled to a tip credit against the minimum wage. Similarly, Defendants are not entitled to take any meal credit against the minimum wage because Defendants failed to comply with the strict record keeping requirements necessary for such deductions.

Plaintiff is likewise entitled to summary judgment on liability on his unjust enrichment claims for the reasons more fully explained below.

## II.   BACKGROUND FACTS

See Plaintiff's Local Rule 56.1(a)(3) statement.

## III.   APPLICABLE LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(c), a moving party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). "Once the moving party has produced evidence to show that it is entitled to summary judgment, the party seeking to avoid such judgment must affirmatively demonstrate that a genuine issue of material fact remains for trial." *Hardrick v. Airway Freight Systems, Inc.,* 63 F. Supp. 2d 898, 901 (N.D. Ill. 1999). The party opposing summary judgment must produce specific evidence showing that there is a genuine issue for trial and may not rely on mere allegations or denials of the pleadings. *Sherry v. Protection, Inc.,* 981 F. Supp. 1133, 1135 (N.D. Ill. 1997).

## IV.   ARGUMENT

### A.   Plaintiff is Entitled to Judgment on his FLSA and IMWL Minimum Wage Law Claims

During the course of Plaintiff's employment, the FLSA and IMWL required employers to pay employees the minimum wage rate of $5.15 and $6.50, respectively, for all time worked in individual work weeks. 29 U.S.C. §206(a)(1); 820 ILCS 105/4. With respect to certain "tipped" employees, an employer was entitled to take a tip credit against the minimum wage, but such tip credit is only available if the employer strictly complies with two requirements: 1) the employee is notified that he will be paid less than the minimum wage, and 2) the employee retains all of the

tips that he receives.[1] 29 U.S.C. §203(m). With respect to the second prong of this test, "the pooling of tips among employees who customarily and regularly receive tips," is permissible, but only if the tips in the tip pool are distributed to employees who customarily and regularly receive tips. 29 U.S.C. § 203(m); *See Chu Chung v. The New Silver Palace Restaurant, Inc.,* 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002) ("The two prerequisites that the employer must fulfill to be eligible for the tip credit are strictly construed, and must be satisfied even if the employee received tips at least equivalent to the minimum wage"). Thus, employers, managers, and other non-tipped employees may *not* participate in a tip pool. *Id.*

> 1. **Plaintiff Worked 226.75 Hours for Defendants, was Paid Less then the Tip Credit Rate, and is Entitled to $1,167.76 in Federal Minimum Wages**

Defendants employed Plaintiff as a waiter between June 14, 2005 and September 18, 2005. S.F. 10. During that time, Plaintiff worked a total of 226.75 hours for Defendants. S.F. 17. Thus, unless Defendants were entitled to a credit or an offset against Plaintiff's minimum wages, Plaintiff was entitled to be paid $1167.76 in federal minimum wages (226.75 hours x $5.15/hr) during the course of his employment.[2]

The undisputed facts show that Plaintiff did not receive a single payroll check from the Defendants during the course of his employment. S.F. 18. Rather, Plaintiff's only form of compensation came from tips left by Defendants' customers. S.F. 18, 20. Tips are not "wages" as defined by the FLSA and are *not* paid by the employer. 29 C.F.R. § 531.60.

Plaintiff did receive a total of two (2) checks from Defendants, one in the amount of $245.00 and the other in the amount of $190.00. But those checks were not payroll checks. S.F. 21, 22. Instead, Defendants had a practice of "owing" employees their earned tips (S.F. 21), and these two checks were intended to compensate Plaintiff for tips "owed" to him and not for

---

[1] In 2005, the federal tip credit rate was $2.13 per hour and the IMWL tip credit was $3.90 per hour, respectively. See 29 U.S.C. 203(m) and 820 ILCS 105/4. The tip credit analysis is otherwise the same under the FLSA and the IMWL. *See Gillis v. Twenty Three East Adams Street Corporation,* No. 04 C 4013, 2006 U.S. Dist. LEXIS 12994, at *3 n.1 (N.D. Ill. March 6, 2006) (stating that "the tip credit requirements under Illinois law are substantially the same as the FLSA's requirements ... Accordingly, the court's analysis of the FLSA's tip credit requirements applies equally to the Illinois Minimum Wage laws").

[2] Under the IMWL, Plaintiff was entitled to $1,473.88 (226.75 x $6.50/hr) in minimum wages.

3

wages. S.F. 22. As evidence of this, the $245.00 check, written off Speak Easy's operating account, specifically indicates in the memo section that it was a payment for "Tips." S.F. 22.

In any event, Defendants were required to pay Plaintiff the minimum wage rate for all time he worked in each *individual* workweek. 29 U.S.C. § 206(a)(1). For purposes of calculating an employee's hourly wage rate, an employer may average an employee's earnings over a single workweek, *Dove v. Coupe,* 759 F.2d 167, 168 (D.C. Cir. 1985); *O'Brien v. Encotech Construction,* No. 00-CV 1133, 2004 U.S. Dist. LEXIS 4696, at *21-22 (N.D. Ill. March 22, 2004), but in no instance may an employer average an employee's earnings for a period longer than a single workweek. *Olson v. Superior Pontiac- GMC,* 765 F.2d 1570, 1578-79 (11th Cir. 1985).

In most work weeks, Defendants paid Plaintiff no wages. Even if one or both of Defendants' checks could be classified as wage payments, those payments cannot be used to offset the weeks in which Defendants paid Plaintiff no wages. *See Olson,* 765 F.2d 1579 (excess commissions earned in one pay period cannot be applied to offset minimum wages in another pay period). Plaintiff was either paid zero, or less then the tip credit rate in all, or virtually all work weeks that he worked. S.F. 18, 22, 37. Thus, Defendants violated 29 U.S.C §206 as a matter of law.

### 2. Defendants are not Entitled to a Tip Credit from its Obligation to Pay Minimum Wages

Plaintiff anticipates that Defendants will argue that they are entitled to a credit or offset against Plaintiff's minimum wages. As explained below, no such credit or offset is available to Defendants.

### a. Defendants never explained the tip credit provisions of the Act to Plaintiff

Like other new hires, upon Plaintiff's hiring, Defendants' gave Plaintiff the same old "schpiel" regarding training procedures. S.F. 11. This "schpiel" did not include any discussion on Defendants' intent to take a tip credit against Plaintiff's minimum wages. S.F. 11. Further, Defendants did not provide Plaintiff with any written handout, policy, or rule regarding Defendants' intent to take a tip credit against Plaintiff's minimum wages. S.F. 11. Because Defendants did not inform Plaintiff of any intent to take a tip credit against his minimum wages,

4

Plaintiff is entitled to be compensated the full minimum wage for all hours he worked for Defendants. *Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3rd Cir. 1994) ("if the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage").

### b. Defendants' Daily Retention of Tips and Inclusion of Managers in the Tip Pool Renders the Pool Illegal

Tip pools not "prescribed by the FLSA" *violate* the FLSA. *Wright v. U-Let-Us-Skycap Servs., Inc.*, 648 F. Supp. 1216, 1217 (D. Colo. 1985) (agreement that employees turn in all their tip income to the employer, so that employer could pay them the minimum wage from this sum but retain the difference, was in "blatant contravention" of § 203(m)). Where non-tipped employees were included in the tip pool, "the pooling scheme was illegal . . .." *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 550-51 (6th Cir. 1999). *Marshall v. Krystal Co.*, 467 F. Supp. 9, 13 (E.D. Tenn. 1978) (restaurant could not consider its employees' tips as a portion of their wages where the employees were not permitted to keep all the tips they received); *Winans, et. al., v. W.A.S., Inc.*, 772 P.2d 1001,1008 (Wash. 1989)(an arrangement where the employer takes all of an employee's tips and uses this money to fulfill his minimum wage obligation and to help pay for other expenses violated the FLSA).

Defendants here retained tips earned by Plaintiff (and other persons) on a daily basis. For example, on July 1, 2005, Plaintiff and other servers collected a total of $273.00 in tips from customers. S.F. 30. Only $135.00 of those tips, however, were distributed to Plaintiff and other waiters. S.F. 30. Defendants also retained tips earned by Plaintiff (and other persons) on a weekly basis. For example, for the workweek ending July 3, 2005, a total of $553.00 in tips were earned by waiters, however, only a total of $400.00 of those tips were distributed to waiters by the end of that work week. S.F. 31.[3] Defendants violated §203(m) by improperly retaining tips in the tip pool; therefore, they are not entitled to take a tip credit against Plaintiff's minimum wages. *Ayres v. 127 Restaurant Corp.*, 12 F. Supp. 2d 308, 309 (concluding that a restaurant violated §203(m) because its general manager participated in the tip pool and therefore the

---

[3] A spreadsheet is attached as Exhibit C, attachment 4, to Plaintiff's Statement of Undisputed Facts showing the amount of tips collected by Plaintiff and other waiters each day and in each week during the course of his employment and the amount of the tips retained by Defendants.

restaurant was not entitled to a tip credit against minimum wages); *Chung*, 246 F. Supp. 2d at 229 (stating "the practice of forced sharing of tips with management is such an illegal practice, regardless whether or not the members of management were engaged in restaurant services that could be the subject of tipping").

### 3. Meals Morgan May have Eaten are not a Credit or Offset

An employer may deduct the cost of meals and other "facilities" from its employees' wages under certain circumstances. The deduction must be no more than the *actual* cost of the meal to the employer. 29 C.F.R. §531.3(a). Additionally, the regulations require the employer to maintain and preserve records that substantiate the costs of the meals on a work week basis. 29 C.F.R. §516.27(a-b); *Dole v. Bishop*, 740 F. Supp. 1221, 1227 (S.D. Miss. 1990). The employer has the burden of demonstrating that it is entitled to a meal credit under Section 3(m). *Donovan v. The New Floridian Hotel, Inc.*, 676 F.2d 468, 475 n.12 (11th Cir. 1982).

Defendants have no records substantiating the *actual* cost of any meal Plaintiff ate. S.F. 33, 34. Defendants likewise do not know the actual cost of those meals. S.F. 33. Defendants have only produced "meal tickets" identifying food items Plaintiff may have eaten and/or shared with other Room d/b/a South employees. S.F. 34, 35, 36. These meal tickets, however, do not comply with 29 C.F.R. §516.27(a-b) because they reflect the retail or menu price of the meal items and not their actual cost to Defendants. S.F. 34, 35, 36.

In the absence of the required documents, Defendants are not entitled to take any credit or offset against Plaintiff's minimum wages for any meals he may have eaten. *Bishop*, 740 F. Supp. at 1227 (holding that defendants were not entitled to a meal credit because they kept no contemporaneous records of meal credits and because they attempted to take a meal credit for the full retail price of the meals); *Reich v. Chez Robert Inc.*, 821 F. Supp. 967, 978 (D.C. N.J. 1993).

Even if Defendants were entitled to a meal credit in certain work weeks, Plaintiff would be entitled to the full minimum wage rate for hours worked in weeks where he ate no meals. In many individual weeks, Plaintiff ate no meals at Defendants' restaurants. S.F. 35. Thus, in such weeks where he ate no meals, Defendants are not entitled to offset his minimum wages with any meal credits. *O'Brien*, 2004 U.S. Dist. LEXIS 4396, at *21-22 (N.D. Ill. March 22, 2004) (wage rates are calculated on a single work week basis); *See Olson*, 765 F.2d at 1579 (excess

6

commissions earned in one pay period cannot be applied to offset minimum wages in another period).

### 4.     Plaintiff is Entitled to Liquidated Damages

When an employer is liable for overtime compensation, the FLSA directs the court to also award liquidated damages in an amount equal to the plaintiff's actual damages. 29 U.S.C. §216(b)(an employer who violates the overtime compensation provisions of the FLSA "shall be liable" for liquidated damages in an amount equal to unpaid back wages). Such an award in mandatory unless (1) the employer's failure to pay overtime was in good faith, and (2) the employer had reasonable grounds for believing that its act or omission did not violate the FLSA, 29 U.S.C. §260; otherwise, liquidated damage awards are mandatory. See *Walton v. United Consumers Club*, 786 F.2d 303, 310 (7th Cir. 1986)("Doubling is not some disfavored 'penalty.' ... Double damages are the norm, single damages the exception, the burden on the employer."); *Avita v. Metropolitan Club of Chicago, Inc.*, 49 F.3d 1219, 1223 (7th Cir. 1995)(Under the FLSA, double damages are the norm; single damages are the exception.)

The good faith defense under Section 11 of the FLSA is an affirmative one, subject to waiver. *Bankston v. Illinois*, 60 F.3d 1249, 1254-55 (7th Cir. 1995); *Baker v. GTE N.*, 927 F. Supp 1104, 1118 (N.D. Ind. 1996); *Reich v. Scherer Buick Co.*, 887 F. Supp. 1142, 1147 (C.D. Ill. 1995)(granting Plaintiff liquidated damages on summary judgment). Defendant did not raise a "good faith" affirmative defense in their Amended Answer and Affirmative Defenses to Plaintiff's Complaint. S.F. 1. Thus, Defendants have waived the affirmative defense of "good faith" and Plaintiff is entitled to liquidated damages as a matter of law.

### B.     Defendants are all Covered Entities under the FLSA and IMWL and are Jointly Liable for the Violations of the FLSA and IMWL

#### 1.     Speakeasy, South, and Jody Andre are Plaintiff's "Employers"

Defendants Speakeasy and South admit that they were each Plaintiff's "employer" as defined by the IMWL, 820 ILCS 105/3(c). Given that the definition of "employer" as contained in the FLSA and the IMWL are nearly identical, if Speakeasy and South are "employers" as defined by the IMWL, they are also Plaintiff's "employer" as defined by the FLSA.[4] *Reed v.*

---

[4] Under the IMWL, an "employer" "includes any individual, partnership, association, corporation, business trust, governmental or quasi-governmental body, or any person or group of

*Mycopharma,* 2000 U.S. Dist. LEXIS 11539, *13 (N.D. Ill. August 7, 2000) (stating that the definition of the term "employer" under the IMWL is "virtually identical" to the definition of the term under the FLSA).

Jody Andre is likewise Plaintiff's "employer" for purposes the FLSA and IMWL. She was the sole owner of The Room d/b/a South and is the part owner of Speak Easy LLC. S.F. 6. Andre was also the "ultimate authority" at both restaurants. S.F. 8. She was responsible for compensating Plaintiff and for complying with the IMWL and the FLSA. S.F. 8. For purposes of the FLSA and IMWL, she is Plaintiff's "employer." *Reich v. Harmelech,* 1996 U.S. Dist. LEXIS 7744, *9 (N.D. Ill. June 4, 1996)(the term "employer" broadly includes any individual who had control over the alleged wage violation.).

### 2.    Defendants are Plaintiff's "Joint Employer" Under The FLSA

The term "joint employer" should be given "an expansive interpretation in order to effectuate Congress' remedial intent in enacting the FLSA." *Karr Strong Detective Agency, Inc.,* 787 F.2d 1205, 1207 (7th Cir. 1985). Individuals who come within the definition of the term "employer" are jointly and severally liable for non-compliance of the wage violation. *Fegley v. Higgins,* 19 F.3d 1126, 1131 (6th Cir. 1994); *Sherman v. Premium Concrete Cutting, Inc.,* 2004 U.S. Dist. LEXIS 22127, 2 (N.D. Ill. October 29, 2004). The U.S. Department of Labor regulations provide guidance as to when a joint employer relationship exists:

> Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
> (1)    Where there is an arrangement between the employers to share the employee's services, as for example, to interchange employees; or
>
> (2)    Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or

---

persons acting directly or indirectly in the interest of an employer in relation to an employee." 820 ILCS 105/3. Section 3(d) of the FLSA, 29 U.S.C. § 203(d), similarly defines an "employer" as including "any person acting directly or indirectly in the interest of an employer in relation to an employee."

(3)     Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. 791.2(b).

All three (3) types of joint employer situations exist here. First, Speakeasy and The Room d/b/a South shared Plaintiff's and other employees' services. S.F. 12. Defendants admit that Plaintiff worked at both restaurants. S.F. 10, 12. Moreover, Defendants admit that Plaintiff was both Speakeasy and The Room d/b/a South's "employee." S.F. 10. Thus, the first type of joint employer relationship exists. The second type of joint employer relationship is also satisfied because Speakeasy acted both directly and indirectly in the interest of The Room d/b/a South in dealing with Plaintiff. For example, Speak Easy acted in The Room d/b/a South's interest when it (1) referred Plaintiff to The Room d/b/a South for employment, (2) paid Plaintiff with a check drawn on Speak Easy's operating account, and (3) permitted The Room d/b/a South to use Speak Easy's supplies and employees on days when Plaintiff worked for The Room d/b/a South. S.F. 9, 22, 12, 13. Finally, Defendants satisfy both elements of the third joint employer situation. Speak Easy and South are not "completely disassociated" with respect to Plaintiff's employment; Speak Easy paid Plaintiff for tips he earned while working for The Room d/b/a South. S.F. 22. Defendants also shared common control of Plaintiff by virtue of the fact that Jody Andre was the "ultimate authority" at both Speak Easy and The Room d/b/a South. S.F. 8; 29 C.F.R. 791.2(b)(3); *Chao*, 346 F.3d at 918 (finding that a joint employment relationship existed where two employers shared employees, had the same scheduler, and were under the common control of one woman).

### 3.     Speakeasy and The Room d/b/a South are a "Single Enterprise" Under the FLSA

FLSA coverage exists when (a) the plaintiff is a covered individual under the Act or (b) the employer is a covered enterprise under the Act. *Rivera v. Heights Landscaping, Inc.*, 2004 U.S. Dist. LEXIS 3746, * 2 (N.D. Ill. March 5, 2004)(Mag. J. Nolan).[5] Two or more people,

---

[5] The FLSA defines the term "enterprise" in the following manner: Enterprise means the related activities performed (either through unified operation or common control) by any person

9

establishments, or other business units are considered a single "enterprise" if they (1) perform related activities, (2) through "unified operation" or "common control", and (3) for a common business purpose. 29 C.F.R. 779.202; *Jensen v. Longwood Towers LLC,* 2000 U.S. Dist. LEXIS 7319, at *5 (N.D. Ill. May 26, 2000). Defendants meet this test.

### a. Speak Easy and The Room d/b/a South Perform "Related Activities"

Related activities are those activities that are the "same or similar." 29 C.F.R. 779.206(a); *Martin v. Deiriggi,* 985 F.2d 129, 133 (4th Cir. 1992). Defendants here operated two restaurants, Speak Easy and The Room d/b/a South. S.F. 2, 3. This alone is sufficient to meet the "related activities" requirement. *See Dole v. Bishop,* 740 F. Supp. 1221, 1224 (S.D. Miss. 1990) (concluding that the activities of two seafood restaurants were "undoubtedly similar" and thus met the "related activities" requirement).[6]

### b. Speak Easy and The Room d/b/a South are Under "Common Control or Unified Operation"

"Common control ... exists where the performance of the described activities [is] controlled by one person or by a number of persons, corporations, or other organizational units acting together." 29 C.F.R. 779.215. "Control ... includes the power to direct, restrict, regulate, govern, or administer the performance of the activities". *Id.* Throughout Morgan's employment, Speak Easy and South were under the "common control" of Jody Andre. Andre had an ownership interest in both restaurants, and more importantly, was the "ultimate authority" at both restaurants.

### c. Speak Easy and The Room d/b/a South have a Common Business Purpose

---

or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed by such enterprise by an independent contractor.29 U.S.C. § 203(r)(1).

[6] See also, *Martin v. Deiriggi,* 985 F.2d 129, 133-34 (4th Cir. 1992) (concluding that a motel and restaurant and lounge met the "related activities" requirement for single enterprise coverage); *Chao v. A-One Medical Services, Inc.,* 346 F.3d 908, 915 (9th Cir. 2003) (concluding that two companies "clearly engaged" in "related activities" because both provided home health services); *Brennan v. Plaza Shoe Store,* 522 F.2d 843, 848 (8th Cir. 1975) (concluding that a dress shop and shoe store "clearly" engaged in "related activities" because both sold apparel).

10

"A common business purpose is generally found where there are related activities and common control". *Chao v. A-One Medical Services, Inc.*, 346 F.3d 908, 916 (9th Cir. 2003), citing *Plaza Shoe Store*, 522 F.2d 843, 848 (8th Cir. 1975). As explained above, that is the case here. In addition, Speakeasy and South shared employees and supplies and also capitalized on the good will of each other. S.F. 12, 13, 7. See *Reich*, 23 F.3d at 116 (concluding that two companies had a common business purpose because they "complemented and depended on each other" and because one company filled its labor needs with the other's employees); *Dole*, 740 F. Supp. at 1225 (concluding that two seafood restaurants shared a common business purpose because they both provided income to the husband-wife owners, and they both capitalized on the goodwill of the other restaurant). Thus, Defendants meet the common business purpose element.

### 4. Speak Easy and The Room d/b/a South are an Enterprise Engaged in Commerce

Enterprise coverage exists when a plaintiff is employed by an "enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1). The FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce" as an enterprise that:

> (i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

29 U.S.C. §203(s)(1)(A).

Defendants satisfy the first prong of the definition "enterprise engaged in commerce or in the production of goods for commerce." Plaintiff handled food items and other restaurant materials that were moved in or produced for commerce. S.F. 14.

Defendants also meet the second prong of the definition. Defendants transact in excess of $500,000 per year in gross annual sales. S.F. 4. In 2004, Speakeasy's gross revenue was $799,332.00, and South's gross revenue was $480,715.00. S.F. 4. Thus, Defendants' total gross revenues in 2004 were $1,280,047.00. S.F. 4. *See Chao*, 346 F.3d at 914-15 (stating that when

11

multiple businesses constitute a single enterprise, the proper inquiry is whether all the entities of the enterprise *together* have a gross sales figures that exceeds $500,000); *Martin*, 985 F.2d at 133 n.2 (stating the same). In 2005, Speak Easy's gross revenue was $689,845.00 and South's gross revenue was $249,052.00. S.F. 4. Thus, Defendants' total gross revenues in 2005 were $938,897.00 in 2005. *Id.* As the arithmetic demonstrates, Defendants' annual gross volume of sales made or business done exceeds $500,000.00 in both 2004 and 2005.

## C.     Plaintiff is Entitled to Judgment on His Unjust Enrichment Claim[7]

Plaintiffs' unjust enrichment claim is predicated on his entitlement to tips left for him by Defendants' customers but which Defendants' took from him pursuant to a scheme that violated federal law. *Davis v. B & S, Inc.*, 38 F. Supp. 2d 707 (N.D. In. 1998)("[§ 203(m) of the FLSA] precludes an agreement between an employer and a 'tipped employee' that any part of tips received by such employee belongs to the employer and must be turned over to the employer").

An unjust enrichment claim is viable when it seeks the return of benefits retained under a contract that is void. *TLC The Laser Center, Inc., v. Midwest Eye Institute II, Ltd.*, 306 Ill. App. 3d 411, 429 (1st Dist. 1999)("A contract expressly prohibited by a valid statute is void. This proposition has no exception, for the law cannot at the same time prohibit a contract and enforce it"); *Chrysler Capital Corp. v Century*, 778 F. Supp 1260, 1272 (S.D.N.Y. 1991)(if the contract is void, then recovery under an unjust enrichment theory may be proper).

### 1.     Defendants were unjustly enriched

Plaintiff was paid *no* wages in certain work weeks. S.F. 18, 20, 37. Plaintiff's compensation instead was paid to him by Defendants' *customers* – not Defendants -- in the form of tips. S.F. 20. Tips are not "wages" as defined by the FLSA and are *not* paid by the employer. 29 C.F.R. § 531.60. Defendants' scheme both deprived Plaintiff of thousands of dollars in tip income *and* allowed Defendants to pay the wages of managers with Plaintiffs' tips.

> "Many unjust enrichment cases involve 'situations in which the benefit the plaintiff is seeking to recover proceeded directly from him to the defendant.' (citation omitted). The situation in this case, however, is different in that the plaintiff is seeking recovery of a benefit that was transferred to the defendant by a third party. In such situations, courts have found the retention of the benefit would be unjust where (1) the benefit should have been given to the plaintiff, but the third party mistakenly gave it to the defendant instead (citation omitted), (2) the defendant procured the benefit from the third party through

---

[7] Plaintiff seeks judgment on liability only with respect to his unjust enrichment claim.

some type of wrongful conduct, or (3) the plaintiff for some other reason has a better claim to the benefit than the defendant (citations omitted).

*HPI Health Care Services, Inc., Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 161-62 (1989).

Each of these elements is satisfied here. *First,* Plaintiff seeks the recovery of tips that customers intended they receive but instead were taken from them by Defendants. *Second,* Defendants procured the benefit (the tips) from the customers through their wrongful conduct – a compensation scheme illegal under federal law. *Miller v. Gupta,* 275 Ill App. 3d 539, 544 (5th Dist. 1995)("equity and fairness will not allow a party to profit from his own wrongdoing"). *Third,* Plaintiffs have a better claim to the benefit (the tips) than does Defendant because they were the intended recipient of the gratuity left by customers and they were persons whose labors earned the benefit.

Plaintiff is, therefore, entitled to judgment on his unjust enrichment claim.

## 2. *Sorensen v. CHT Corp was Incorrectly Decided*

Plaintiff anticipate that Defendants will cite to *Sorensen v. CHT Corp.,* 2004 U.S. Dist. LEXIS 3729 (N.D. Ill. 1994) for the proposition that a plaintiff may not state both a tip credit claim based on a violation of 29 U.S.C. 203(m) and unjust enrichment claim. The Sorensen court concluded that an unjust enrichment claim for unlawfully retained tips was not viable because "the remedy [for unlawfully retained tips] is found in the FLSA and not the common law of quantum meruit." The *Sorensen* case was the first, and to Plaintiff's knowledge, the only case to ever address this issue. It was also wrongly decided.[8]

The *Sorensen* Court failed to address that the FLSA is not an "exclusive remedy," only a comprehensive one. *Williamson v. General Dynamics Corp.,* 208 F.3d 1144 , 1151 (9th Cir. 2000). Plaintiff seeks different remedies as part of his different FLSA and unjust enrichment claims. The remedy for Plaintiff's minimum wage claims predicated on Defendants' illegal use of a tip credit is the difference between the tip credit rate paid to Plaintiff ($0.00 per hour) and the then applicable federally mandated minimum wage ($5.15 per hour), plus liquidated damages.

---

[8] *Sorensen* was settled by the parties while the Court's dismissal of the unjust enrichment claim was pending on a motion for reconsideration. Plaintiff's counsel here was also counsel in the *Sorensen* matter.

The unjust enrichment claim seeks a different remedy. That claim seeks the difference between the tips that Defendants tendered back to Plaintiffs and the tips that were illegally retained by Defendants. This quantum of damages is not a remedy available to Plaintiff through the FLSA. *Balducci v. Chesterfield County*, 1999 U.S. App. LEXIS 18657 (4th Cir. 1999)(dismissing FLSA case for failure to state claim where salary dispute was not cognizable under the FLSA because it did not seek minimum or overtime wages and should have instead been pursued under state law).

Also not addressed by the *Sorensen* court, is that the FLSA does not preempt state law and does not completely occupy the field.[5] 29 U.S.C. § 218(a); *see also Kirschbaum Co. v. Walling*, 316 U.S. 517, 522 (1942); *Overstreet v. North Shore Corp.*, 318 U.S. 125, 128 (1943) (Congress, in enacting the FLSA, did not make it coextensive with the limits of its power under the Commerce Clause; Congress therefore chose not to enter areas which it might have occupied). Thus, whether a claim of unjust enrichment is preempted by the Act depends on whether the remedy sought in the claim would result in conflict preemption. *Allen v. WTD Indus.*, 2000 U.S. Dist. LEXIS 22382 *9 (D. Ore. 2000).

Finally, the *Sorensen* court also failed to address that state law claims that fill in the gaps of FLSA enforcement are wholly permissible. Plaintiffs' state law unjust enrichment claim does not seek the recovery of "wages," but instead seeks the disgorgement of tip income. State law claims posited on different facts or that seek different relief than that available under the FLSA are not preempted. *Paukstis v. Kenwood Golf & Country Club, Inc.*, et. al., 241 F. Supp. 2d 551 (D. Md., 2003) (denying motion to dismiss state law tort claims based on FLSA preemption because claims sought different remedies); *Monahan, supra* (same); *Balducci, supra* (same). For example, in *Williamson v. General Dynamics Corp.*, 208 F.3d 1144 (9th Cir. 2000), the court considered the issue of whether a common-law fraud claim was preempted by the FLSA's anti-

---

[5] Section 218(c) states that "No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek established under this chapter, and no provision of this chapter relating to the employment of child labor shall justify noncompliance with any Federal or State law or municipal ordinance establishing a higher standard than the standard established under this chapter."

retaliation provision because the fraud claim would present an obstacle to the FLSA's purposes and enforcement. The court held that the fraud claim was not preempted because the plaintiffs were never subject to the FLSA's anti-retaliation provision. In *Pacific Merchant Shipping Ass'n v. Aubry*, 918 F.2d 1409 (9th Cir. 1990), the court held that the FLSA did not preempt application of California's overtime pay laws to seamen and marine workers who were specifically excluded from coverage under the FLSA.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff requests that judgment be entered in his favor on his FLSA and IMWL minimum wage law claims and his claim for unjust enrichment.

Respectfully submitted,

Dated:  September 28, 2006

Douglas M. Werman
Werman Law Office, P.C.
77 W. Washington, Suite 1815
Chicago, Il 60602
(312) 419-1008

Attorneys for Plaintiff

15

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of **Plaintiff's Memorandum of Law in Support of His Motion for Summary Judgment on Liability with Respect to his FLSA, IMWL, and Unjust Enrichment Claims** was served via electronic mail on October 2, 2006 to:

Todd Church
Perkins Coie, LLP
131 South Dearborn St., Ste. 1700
Chicago, IL  60603

Paul J. Andre
Perkins Coie, LLP
101 Jefferson Drive
Menlo Park, CA 94025

s/Douglas M. Werman
Douglas M. Werman