**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANDREW MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.:  05 C 5795 |
| v. | ) | |
| | ) | Magistrate Judge Nolan |
| SPEAK EASY, LLC, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Plaintiff seeks in this lawsuit to recover the small amount of minimum wages owed to him for the work he performed for Defendants as a waiter. During the course of his employment by Defendants, Plaintiff was required to work – literally – for tips. Defendants did not pay him the minimum wage mandated by Congress or the Illinois legislature for each week he worked. Worse, Defendants also did not allow Plaintiff to retain all the tips that he did earn. Instead, a portion of his tips were retained by Defendants themselves and shared with Defendants' managers. After his own efforts to resolve his claims with Defendants failed, Plaintiff filed this suit under the Fair Labor Standards Act, 29 U.S.C. 206, and the Illinois Minimum Wage Law, 820 ILCS 105/4, together with an Illinois state law claim for unjust enrichment.

Defendants have now moved for judgment on all of Plaintiff's claims. Defendants make two arguments in support of their motion. *First*, that they were entitled to pay Plaintiff the tip credit rate and were not obligated to pay Plaintiff the full minimum wage. *Second*, that they made payments sufficient to satisfy that tip credit rate. For the reasons set forth below, neither argument has merit.

## II.    ARGUMENT

### A.    Defendants were Required to Pay Plaintiff the Full Minimum Wage Rate, not the Applicable Tip Credit Rate

The FLSA and IMWL allow an employer to take a credit against certain tipped employees' minimum wages, but only if the employer meets the following two requirements: 1) the employee is first notified that he will be paid less than the minimum wage, and 2) the employee retains all of the tips that he receives, although a lawful tip pooling arrangement among other tipped employees is permissible. 29 U.S.C. §203(m); 820 ILCS 105/4(c). Here, Defendants did not comply with either requirement.

### 1.      Defendants did not Inform Plaintiff that they were Taking a Tip Credit Against his Minimum Wages

Jodi Andre testified in her deposition that she did not inform Plaintiff of Defendants' intent to take a tip credit against Plaintiff's wages. Plaintiff's Local Rule 56.1(b)(3)(C) Statement of Additional Material Facts 1 (hereafter "P.A.S.F. __"). Defendants also did not provide Plaintiff with any written handout, policy, or rule regarding Defendants' intent to take a tip credit against Plaintiff's minimum wages. P.A.S.F. 1. To the extent Defendants' argument is based on Ms. Andre's new Declaration that contradicts her prior deposition testimony, it must be rejected. *Ineichen v. Ameritech,* 410 F.3d 956, 963 (7th Cir. 2005) citing *Bank of Illinois v. Allied Signal Safety Restraint Sys.,* 75 F.3d 1162, 1168-69 (7th Cir. 1996) ("As we explained in Bank of Illinois, 'we have long followed the rule that parties cannot thwart the purposes of Rule 56 by creating 'sham' issues of fact with affidavits that contradict their prior depositions . . . . If such contradictions were permitted . . . the very purpose of the summary judgment motion -- to weed out unfounded claims, specious denials, and sham defenses -- would be severely undercut'").[1]

The facts, as testified to by Ms. Andre, establish that Defendants never informed Plaintiff of their intent to take a tip credit against his minimum wages. Thus, Plaintiff is entitled to be compensated the full minimum wage for all time he worked for Defendants. *Reich v. Chez Robert, Inc.,* 28 F.3d 401, 403 (3rd Cir. 1994) ("if the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage").

### 2.      Plaintiff was not Allowed to Retain all of his Earned Tips

---

[1] Jodi Andre gave a nearly six hour deposition in this case. Defendants do not cite to that testimony even one time, instead solely relying on her new "Declaration" that almost entirely contradicts her deposition testimony.

The undisputed facts also establish that Defendants both improperly retained Plaintiff's and other employees' tips and that managers participated in the tip pool. For example, on July 1, 2005, Plaintiff and other servers collected a total of $273.00 in tips from customers. P.A.S.F. 7. Only $135.00 of those tips, however, were distributed to Plaintiff and other waiters. P.A.S.F. 7.

Defendants also retained tips earned by Plaintiff and other persons on a weekly basis. For example, for the workweek ending July 3, 2005, a total of $553.00 in tips were earned by waiters, however, only a total of $400.00 of those tips were distributed to waiters by the end of that work week. P.A.S.F. 8. Defendants likewise retained tips in many other work weeks. P.A.S.F. 8.[2] Defendants' practice of retaining tips in the tip pool violates §203(m). *Wright v. U-Let-Us-Skycap Servs., Inc.*, 648 F. Supp. 1216, 1217 (D. Colo. 1985)(agreement that employees turn in all their tip income to the employer, so that employer could pay them the minimum wage from this sum but retain the difference, was in "blatant contravention" of §203(m)).

The evidence also suggests that both Keila Herrington and David Williamson were managers and that they participated in Defendants' tip pool. P.A.S.F. 3, 4, 5; Plaintiff's Local Rule 56.1(b)(3)(B) Response to Defendants' Statement of Material Facts As To Which There Is No Genuine Issue, 15, 16, 17, 18 (hereafter "R.D.S.F. __"). This violated 29 U.S.C. §203(m). See *Ayres v. 127 Restaurant Corp.*, 12 F. Supp. 2d 308, 309 (concluding that a restaurant violated §203(m) because its general manager participated in the tip pool and therefore the restaurant was not entitled to a tip credit against minimum wages); *Chung*, 246 F. Supp. 2d at 229 (stating "the practice of forced sharing of tips with management is such an illegal practice, regardless whether or not the members of management were engaged in restaurant services that could be the subject of tipping"). As a result of Defendants' violation of §203(m), Plaintiff is entitled to be compensated the full minimum wage for all hours he worked for Defendants. See *Reich, supra.*

## B.   Plaintiff was not Paid the Tip Credit Rate of $3.90 Per Hour at South

Even if Defendants met the requirements of 29 U.S.C. 203(m) and were allowed to take a tip credit against their obligation to pay the full hourly minimum wage, Defendants still failed to pay Plaintiff the applicable tip credit rate of $3.90 per hour for all time worked he worked at

---

[2] A spreadsheet is attached as Exhibit F, attachment 3 to Plaintiff's Local Rule 56.1(b)(3)(C) Statement of Additional Material Facts showing the amount of tips collected by Plaintiff and other waiters each day and in each week during the course of his employment and the amount of the tips retained by Defendants.

South in individual work weeks. To support their argument that Plaintiff was paid such wages, Defendants claim that Plaintiff received several different forms of compensation each week which in the aggregate were sufficient to bring his pay above the state and federal tip credit rate: (1) wages in the form of "tax withholdings" (2) cash or manual checks, (3) tips, and/or (4) meals. See Defendants' Memorandum of Law in Support of their Motion for Summary Judgment, p. 11-12 (hereafter Def.'s Mem., p. ___).

There is no merit to this argument. Indeed, this argument both relies on payments never made to Plaintiff, and credits against the minimum wage to which Defendants are not entitled.

### 1.     Defendants' Chart Fails to Show how much Plaintiff was Paid in Individual Work Weeks

To support their false argument, Defendants created a chart which they contend "graphically demonstrates that Plaintiff was paid in excess of the required minimum wage rate." Def.'s Mem. p. 11-12. The chart purports to show what Plaintiff was paid in "semi-monthly" pay periods,[3] not in individual work weeks. Thus, the chart is irrelevant. What Plaintiff was paid in semi-monthly or bi-weekly pay periods matters not one wit; instead, what matters is whether Plaintiff received minimum wages for all time worked in *individual* work weeks. 29 U.S.C. § 206(a)(1); *Olson v. Superior Pontiac- GMC*, 765 F.2d 1570, 1578-79 (11th Cir. 1985)(when determining an employee's average hourly wage rate, an employer may not average the employee's earnings for a period longer than a single workweek). The chart should not, therefore, be considered by the Court.

### 2.     Plaintiff was not Paid Minimum Wages for the Work Weeks ending June 20 or June 26, 2005

Defendants claim Plaintiff was paid as follows during this bi-weekly pay period:

| Semi-Monthly Pay Period | Hours Worked with Evidentiary Basis | Compensation for Pay Period with Evidentiary Basis |
|---|---|---|
| June 13-26<br>June 14<br>June 15 | <br>4 hours (SPE 000173)<br>4 hours (SPE 000173) | Wages = $100.00 (withheld for payroll taxes- SPE000169; Andre Decl. ¶ 14) |

---

[3] Defendants separated their "pay periods" into two week spans yet improperly categorized them as semi-monthly. That is incorrect. Semi-monthly occurs twice a month whereas bi-weekly occurs every two weeks. Here, Defendants' fictional pay periods are broken down into bi-weekly, or two week long, pay periods.

| June 24 | 8 hours (SPE 000174) | Tips = $158.00 (SPE000004-5) |
| June 25 | 8 hours (SPE 000174) | |
| | | Other = $33.00 (meal comps – SPE000054) |

*a.*    *Defendants' Made No Tax Withholdings Payment to Plaintiff*

Defendants contend they satisfied their obligation to pay Plaintiff minimum wages by making a "tax withholding" payment of $100.00. That is a false contention. No such "payment" to Plaintiff or to any applicable taxing authority was ever made. Ms. Andre was questioned in her deposition on each payment Plaintiff received each week he worked. Ms. Andre did *not* testify that Defendants paid Plaintiff the tip credit rate during this pay period, but then withheld those wages in their entirety to offset Plaintiff's payroll tax liability. R.D.S.F. 23. Thus, the Court should reject Ms. Andre's self-serving Declaration. See *Ineichen, supra.*

The absence of any documents produced by Defendants that show any tax withholding payments made from Plaintiff's "wages" or payments remitted to taxing authorities on Plaintiff's behalf further shows that the alleged $100.00 payroll tax withholding payment is a fiction.

Further proof that the alleged "withholding" payment is a fiction is that $100.00 "withholding payment" far exceeds the amount of Plaintiff's actual tax liability for this payroll period. Assuming Plaintiff's gross wages amounted to $258.00 for this period (for $100.00 in "wages" and $158.00 in tips), and Plaintiff claimed no tax exemptions and thus was taxed at the highest tax rate, his federal and state payroll tax withholdings would amount to only $42.47 – not $100.00   P.S.A.F. 9.   The alleged $100.00 withholding payment was simply invented for purposes of this motion to offset the amount Plaintiff was entitled to in wages at the tip credit rate. Indeed, for 24 hours of work at Defendants' alleged rate, Plaintiff was entitled to $93.60 (24/hours *$3.90 = $93.60).

*b.*    *Defendants' Alleged Payroll Tax Withholding Payment Does Not Offset*
        *Plaintiff's Owed Wages*

Even if Defendants' $100.00 "payroll tax withholding" payment is deemed wages, Defendants still violated the FLSA and IMWL because such a payment is not sufficient to cover the amount of minimum wages Defendants owed to Plaintiff in each of his first two weeks of employment. For the work week ending June 20, 2005, Plaintiff trained for eight (8) hours. According to Defendants' own records, Plaintiff earned no tips. P.A.S.F. 2. Plaintiff was entitled

then to receive the full federal and state minimum wage rate for each hour he trained, or $41.50 ($5.15 x 8) and $52.00 ($6.50 x 8 hours) respectively. 29 U.S.C. §203(m); *Guo Xing Cao v. Chandara Corp.,* 2001 U.S. Dist. LEXIS 8631 at * 12 (S.D.N.Y. 2001) (an employer may not use the tip credit provision if the employee is not allowed to retain tips).

For the work week ending June 26, 2005, Plaintiff worked a total of 16 hours. During that work week, Plaintiff participated in the tip pool and received tips. But Keila Herrington, a South Manager, also participated in the tip pool for that week. P.A.S.F. 5, R.D.S.F. 18. Thus, the tip pool violated 29 U.S.C. §203(m), and again Defendants were not entitled to take a tip credit against Plaintiff's minimum wages. See *Ayres* and *Chung, supra.* Thus, for the work week ending June 26, 2005, Defendants owed Plaintiff $104.00 ($6.50 x 16 hours) in state minimum wages and $82.40 ($51.5 x 16 hours) in federal minimum wages. In total, Defendants owed Plaintiff wages well in excess of $100.00 for the period between June 13th and June 26th.

       c.     *Plaintiff's Tip and Meal Compensation Do Not Constitute Wages to be Credited Against the Tip Credit Rate*

Defendants' chart seems to suggest they are crediting the tips Plaintiff earned, and the several meals that he received, as part of his wages. If so, the chart is in error. Tips are not "wages" as defined by the FLSA and are *not* paid by the employer. 29 C.F.R. § 531.60.

Defendants are likewise not entitled to a meal credit against the minimum wage because they failed to follow the requirements necessary for such a credit. An employer may only deduct the actual cost of the meal to the employer and must maintain and preserve records that substantiate the costs of the meals on a work week basis. 29 C.F.R. §531.3(a); 29 C.F.R. §516.27(a-b). Defendants have no such records showing the *actual* cost of any meal Plaintiff ate. R.D.S.F. 13. Ms. Andre testified that she did not know whether the monetary amounts on the spreadsheets reflected the retail or menu price of the meals. R.D.S.F. 13. There is contrary evidence, however, that cost of the meals Defendants now seek to credit were actually the menu price, or retail cost of the meals. R.D.S.F. 13; P.S.A.F. 12; *Dole v. Bishop,* 740 F. Supp. 1221, 1227 (S.D. Miss. 1990) (holding that defendants were not entitled to a meal credit because they kept no contemporaneous records of meal credits and because they attempted to take a meal credit for the full retail price of the meals); *Reich,* 821 F. Supp. at 978. To the extent the Ms. Andre's Declaration again now contradicts her prior deposition testimony, it must not be considered by the Court. See *Ineichen, supra.*

6

Finally, despite her different Declaration testimony to the contrary, Defendants' had no policy of charging employees for meals while they were working. R.D.S.F. 13. Defendants' payroll documents, Nightly Closing Forms, and Daily Sales Sheets nowhere record any meal deductions taken from or credited against any employee's wages. R.D.S.F. 6, 7. Defendants' effort to take such a credit now, *post hoc*, is false.[4]

### 3. Plaintiff was not Paid Minimum Wages for the Work Weeks ending July 3 or July 10, 2005

Defendants claim Plaintiff was paid as follows during this bi-weekly pay period:

| Semi-Monthly Pay Period | Hours Worked with Evidentiary Basis | Compensation for Pay Period with Evidentiary Basis |
|---|---|---|
| June 27-July 10<br>July 1<br>July 2<br>July 6<br>July 9<br>July 10 | <br>8 hours (SPE 000176)<br>7 hours (SPE 000176)<br>6 hours (SPE 000177)<br>8 hours (SPE 000177)<br>6 hours (SPE 000177) | Wages = $140.00 (withheld for payroll taxes- SPE000169; Andre Decl. ¶ 15)<br><br>Tips = $394.89 (SPE000006-10)<br><br>Other = $40.00 (meal comps – SPE000055-56) |

a. *Defendants' Alleged Payroll Tax Withholding Payment is Fictional*

In the absence of the fictional "payroll tax withholding payment," minimum wages were not paid to Plaintiff during these workweeks. And, like the prior period, Ms. Andre never testified to such a payment being made. R.D.S.F. 24. No documentary evidence likewise supports the payment ever being made. Instead, the only support for such a payment comes from Ms. Andre's self-serving declaration, which contradicts her deposition testimony, and must not be considered by the Court. See *Ineichen, supra.*

The amount of the alleged "withholding payment" is, in any event, not correct. Even assuming Plaintiff's gross wages during this period actually amounted to $534.89 ($140.00 for

---

[4] Defendants may also not take a meal credit against Plaintiff's wages during this pay period because the meal was part of Plaintiff's training. The $33.00 credit Defendants' seek is from an alleged meal consumed on June 15, 2005, which was Plaintiff's second day of employment. The meal ticket for this date clearly indicates that Defendants provided Plaintiff with food for "training" purposes. P.S.A.F. 11. That notation is consistent with Jody Andre's testimony that South's chefs regularly prepared complimentary dishes for new hires and other employees to taste within the first few days of a new hire's start date. P.S.A.F. 10.

the alleged "withholding payment" and $394.89 in tips), and assuming further that he claimed no tax exemptions and was taxed at the highest tax rate, his payroll taxes would only amount to $106.90 – not $140.00. P.S.A.F. 9.

        b.    *Defendants' Alleged Payroll Tax Withholding Payment Does Not Offset Plaintiff's Owed Wages*

During the period between June 27 and July 10, members of South's management retained a portion of Plaintiff's tips in violation of §203(m). On July 1st, 2005, Defendants' tip pool contained $273.00, but only $135.00 of this pool was distributed to Plaintiff and other servers. P.S.A. F. 7. Further, of the tips that were distributed, Jody Andre received $20.00 and management trainee David Williamson received $25.00. P.S.A.F. 4, 6. On July 2, 2005, only $200.00 of the $217.00 tip pool was distributed. P.S.A.F. 7. Manager David Williamson received $70.00 from the tip pool that evening.[5] P.S.A.F. 4. Because Defendants violated §203(m), Defendants were not entitled to take a tip credit from Plaintiff's minimum wages, and Plaintiff was entitled to receive the full federal and state minimum wage rate, or $5.15 and $6.50 respectively for each week in this bi-weekly pay period. *See Ayres* and *Chung, supra.* That amount is $227.50 ($6.50 x 35 hrs) in minimum wages. Thus, even if this Court credits Defendants' alleged $140.00 payroll tax withholding payment, it does not satisfy the amount Defendants owe Plaintiff in minimum wages.

        c.    *Plaintiff's Tip and Meal Compensation Do Not Constitute Wages*

For the reasons stated above in Section IV(C)(2)(c), Plaintiff's tip and meal compensation do not constitute wages.

    **4.**     **Plaintiff was not Paid Minimum Wages for the Work Week Ending July 17 or July 24, 2005**

Defendants claim Plaintiff was paid as follows during this bi-weekly pay period:

| Semi-Monthly Pay Period | Hours Worked with Evidentiary Basis | Compensation for Pay Period with Evidentiary Basis |
|---|---|---|
| July 11-July 24<br>July 16<br>July 17<br>July 18<br>July 22 | <br>6 hours (SPE 000178)<br>4 hours (SPE 000178)<br>3 hours (SPE 000179)<br>7 hours (SPE 000179) | Wages = $110.00 (withheld for payroll taxes- SPE000169; Andre Decl. ¶ 16)<br><br>Tips = $283.00 (SPE000011-14; |

---

[5] David Williamson also participated in the tip pool on July 6, 9, and 10th. P.S.A.F. 4.

| July 23 | 7 hours (SPE 000179) | SPE000178)<br><br>Other = $51.00 (meal comps – SPE000057-58) |
|---------|----------------------|---------------------------------------------------------------|

a.      *Defendants' Alleged Payroll Tax Withholding Payment is Fictional*

For the same reasons as explained above, Defendants' alleged $110.00 payroll tax withholding is likewise false. Ms. Andre did not testify that any such payment/withholding was made from Plaintiff's wages for the bi-weekly pay period between July 11 and July 24. R.D.S.F. 25. As before, the only support for this withholding payment comes from Ms. Andre's Declaration, which contradicts her deposition testimony. Defendants produced no documents or evidence in discovery that this "payment was ever made." Hence, Ms. Andre's Declaration should not be considered by the Court. See *Ineichen, supra.*

The amount of the alleged withholding payment is likewise incorrect. Assuming Plaintiff's gross wages amounted to $393.00 ($110.00 in "wages" and $283.00 in tips), and Plaintiff claimed no tax exemptions and was taxed at the highest tax rate, his payroll taxes would only amount to $71.85. P.S.A.F. 9. Yet, Defendants claim that Plaintiff was paid $110.00 in wages which were then withheld for payroll tax withholdings.

b.      *Defendants' Alleged Payroll Tax Withholding Payment Does Not*
        *Offset Plaintiff's Owed Wages*

David Williamson, a manager at South, participated in the tip pool on July 22nd and 23rd. P.S.A.F. 4. This invalidates the tip pool for that work week. 29 U.S.C. §203(m); *See Ayres* and *Chung,* supra. Defendants also retained a portion of Plaintiff's tips during this work week. On June 23, 2005, Defendants collected $239.00 in the tip pool but only distributed $110.00 of that amount. P.S.A.F. 4. Because the tip pool was invalid, Plaintiff was entitled to $175.50 ($6.50 x 27 hours) in state minimum wages and $139.05 ($5.15 x 27 hours) in federal minimum wages.

c.      *Plaintiff's Tip and Meal Compensation Do Not Constitute Wages*

For the reasons stated above in Section IV(C)(2)(c), Plaintiff's tip and meal compensation does not constitute wages.

**5.      Plaintiff was not Paid Minimum Wages for the Work Week Ending August 14 or August 21, 2005**

Defendants claim Plaintiff was paid as follows during this bi-weekly pay period:

| Semi-Monthly Pay Period | Hours Worked with Evidentiary Basis | Compensation for Pay Period with Evidentiary Basis |
|---|---|---|
| Aug. 8-21 | | Wages = $130.00 (check-SPE000002 (additional $60 was previously owed for tips); Andre Decl. ¶ 18) |
|     Aug. 10 | 4 hours (SPE 000182) | |
|     Aug. 12 | 2.5 hours (SPE 000182) | |
|     Aug. 13 | 7 hours (SPE 000182) | |
|     Aug. 14 | 3 hours (SPE 000182) | |
|     Aug. 17 | 4 hours (SPE 000183) | Tips = $509.36 (SPE000021-28) |
|     Aug. 19 | 4 hours (SPE 000183) | |
|     Aug. 20 | 5 hours (SPE 000183) | Other = $61.50 (meal comps – |
|     Aug. 21 | 3 hours (SPE 000183) | SPE000059-61) |

    a.    *Defendants' Paid Plaintiff No Wages for Work He Performed Between August 8 and August 21*

Defendants allege they satisfied their duty to pay Plaintiff minimum wages for the time he worked between August 8th and August 21st via a $130.00 check payment. That is false. Although Defendants did issue Plaintiff a $190.00 check written off South's operating account (not a $130.00 check) dated August 14, 2005, that check compensated Plaintiff for wages owed to him from prior work weeks. R.D.S.F. 26, 27. Defendants acknowledge that $60.00 of the August 14th check compensated Plaintiff for wages owed to him for working the July 29th private party. Def.'s Mem. p. 11; R.D.S.F. 26, 27. The rest of the check compensated Plaintiff for wages owed to him for working the August 6th private party. R.D.S.F. 26, 27. Given that the $130.00 payment paid Plaintiff for owed wages, Plaintiff received no wages for the time he worked between August 8th and August 21st.

    b.    *In No Instance Does the $130.00 Payment Satisfy Defendants' Wage Obligation for the Work Week Ending August 21, 2005*

Even if the Court credits Defendants with the $130.00 wage payment, Defendants were required to pay Plaintiff the minimum wage rate for all time he worked in each *individual* workweek. 29 U.S.C. § 206(a)(1). Although Defendants' may average Plaintiff's earnings over a work week, Defendants may not average Plaintiff's earnings for a period longer than a single workweek. *Olson*, 765 F.2d at 1578-79. Here, Defendants cannot credit the $130.00 payment Plaintiff received on August 14, 2005 for time he had yet to work in the following work week,

between August 15th and August 21st. *Id.* Therefore, at a minimum, Defendants violated the FLSA and IMWL with respect to the work week between August 22nd and August 28th.

        *c.*      *Plaintiff's Tip and Meal Compensation Do Not Constitute Wages*

For the reasons stated above in Section IV(C)(2)(c), Plaintiff's tip and meal compensation do not constitute wages.

    **6.**    **Plaintiff was not Paid Minimum Wages for the Work Week Ending August 28 or September 4, 2005**

Defendants claim Plaintiff was paid as follows during this bi-weekly pay period:

| Semi-Monthly Pay Period | Hours Worked with Evidentiary Basis | Compensation for Pay Period with Evidentiary Basis |
|---|---|---|
| Aug. 22-Sept. 4 | | Wages = $200.00 (cash paid - SPE000186; P0004; Andre Decl. ¶ 19) |
| Aug. 24 | 4 hours (SPE 000184) | |
| Aug. 25 | 3 hours (SPE 000184) | |
| Aug. 26 | 4 hours (SPE 000184) | |
| Aug. 27 | 4 hours (SPE 000184) | Tips = $472.50 (SPE000029-36) |
| Aug. 28 | 4 hours (SPE 000184) | |
| Sept. 1 | 4.25 hours (SPE 000186) | Other = $48.00 (meal comps – SPE000062-64) |
| Sept. 2 | 6 hours (Stipulated) | |
| Sept. 3 | 6 hours (SPE 000186) | |
| Sept. 4 | 3.75 hours (SPE 000186) | |

        *a.*      *Defendants' Paid Plaintiff No Wages in the Work Week Between August 22nd and August 28th*

Defendants allege that Plaintiff earned $200.00 in wages during the period between August 22nd and September 4th. Indeed, Plaintiff earned $200.00 in wages for working a private party on September 2, 2005. R.D.S.F. 28. Defendants claim this payment satisfies their minimum wage obligation for the two week period. That is false. At most, Defendants satisfied their minimum wage obligation for the week Plaintiff worked the private party, or the week between August 29th and September 4th. Plaintiff's party wages do not offset Defendants' minimum wage obligation for the previous work week between August 22nd and August 28th. *Olson, supra.* Therefore, at a minimum, Defendants violated the FLSA and IMWL in the work week between August 22 and August 28, 2005.

        *b.*      *Plaintiff's Tip and Meal Compensation Do Not Constitute Wages*

For the reasons stated above in Section IV(C)(2)(c), Plaintiff's tip and meal compensation do not constitute wages.

7.   **Plaintiff was not Paid Minimum Wages for the Work Week Ending September 11th or September 18th**

Defendants claim Plaintiff was paid as follows during this bi-weekly pay period:

| Semi-Monthly Pay Period | Hours Worked with Evidentiary Basis | Compensation for Pay Period with Evidentiary Basis |
|---|---|---|
| Sept. 5-18 | | Wages = $312.00 (withheld for payroll taxes - SPE000169; Andre Decl. ¶ 20) |
| Sept. 7 | 4 hours (SPE 000187) | |
| Sept. 8 | 4 hours (SPE 000187) | |
| Sept. 9 | 5 hours (SPE 000187) | |
| Sept. 10 | 4 hours (SPE 000187) | Tips = $567.27 (SPE000037-46) |
| Sept. 11 | 3 hours (SPE 000187) | |
| Sept. 14 | 3 hours (SPE 000188) | Other = $97.00 (meal comps – SPE000065-68) |
| Sept. 15 | 3.25 hours (SPE 000188) | |
| Sept. 16 | 4 hours (SPE 000188) | |
| Sept. 17 | 4 hours (SPE 000188) | |
| Sept. 18 | 5 hours (SPE 000188) | |

a.   *Defendants' Alleged Payroll Tax Withholding Payment is Fictional*

Plaintiff did not work any private parties during his last two weeks of employment. Without party payments to rely on, Defendants assert that "since South had not withheld payroll taxes in his previous three pay periods, it was decided that his wages for this pay period needed to be used to pay-up his required payroll taxes." Andre Decl. ¶ 20.

This too is a fiction. Ms. Andre testified no such payments were made in her deposition and no documents were ever produced showing these payments being made to any taxing authority. R.D.S.F. 29.

b.   *Plaintiff's Tip and Meal Compensation Do Not Constitute Wages*

For the reasons stated above in Section IV(C)(2)(c), Plaintiff's tip and meal compensation do not constitute wages.

**C.   Plaintiff was not Paid the Tip Credit Rate of $3.90 Per Hour at Speak Easy**

Defendants likewise failed to pay Plaintiff any wages, even at the tip credit rate, for work Plaintiff performed at Speak Easy in individual work weeks. Contrary to Defendants' assertions, Plaintiff was employed as a waiter and *not* as an independent contractor at Speak Easy. R.D.S.F. 20. Further, Plaintiff worked a total of twenty (20) hours at Speak Easy. R.D.S.F. 20. Of those twenty (20) hours, Plaintiff trained for four (4) hours. R.D.S.F. 20; P.S.A.F. 2. Plaintiff received no wages and no tips for these training hours. P.S.A.F. 2. Plaintiff also worked at Speak Easy

on two consecutive Fridays, July 8th and July 15th. D.R.S.F. 20. Plaintiff waited on tables these two evenings and did not work any private parties. Plaintiff's sole form of compensation came from tips he received from Speak Easy's customers. D.R.S.F. 20. Defendants violated the FLSA and IMWL by failing to pay Plaintiff wages for the time he worked at Speak Easy.

### D.     Jody Andre is Individually Liable

Defendants claim that Ms. Andre is not liable for Defendants' wage violations because Plaintiff has not pierced the corporate veil of Don't Speak, Inc. That, however, is not required. Ms. Andre is *individually* liable under the FLSA and IMWL. Ms. Andre was the sole owner of South, part owner of Speak Easy LLC, and the "ultimate authority at both restaurants. R.D.S.F. 3, 16. Ms. Andre was responsible for compensating Plaintiff and therefore, qualifies as Plaintiff's "employer" under the FLSA and IMWL. See 29 U.S.C. § 203(d) (defining the term "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee"); *Reich v. Harmelech,* 1996 U.S. Dist. LEXIS 7744, *9 (N.D. Ill. June 4, 1996) (the term employer broadly includes any individual who had control over the alleged violation of the FLSA); 820 ILCS 105/3(c); *Reed v. Mycopharma,* 2000 U.S. Dist. LEXIS 11539, *13 (N.D. Ill. August 7, 2000) (stating that the definition of the term "employer" under the IMWL is "virtually identical" to the definition of the term under the FLSA).

### E.     Defendants' Retained Plaintiff's Tips Making Plaintiff's Unjust Enrichment Claim Viable

As explained above and in Plaintiff's Local Rule 56.1(b)(3)(C) Statement of Additional Material Facts, Defendants retained Plaintiff's tips on both a daily and weekly basis. P.S.A.F. 7,8. Plaintiff's claim seeks the return of these earned tips. Defendants, citing *Sorensen v. CHT Corp.,* 2004 WL 442638 at *5-7, 2004 U.S. Dist. LEXIS 3729 (N.D. Ill. March 10, 2004), contend that the FLSA and IMWL "preempts" Plaintiff's unjust enrichment claim. Defendants are wrong.

In reaching the conclusion that the FLSA preempted Plaintiff's unjust enrichment claim, the *Sorensen* court reversed the presumption under well established preemption principles: that the powers of the states are not to be superseded in areas of traditional state concern absent a "clear and manifest" congressional purpose. *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230 (1947). Wage laws are clearly an area of traditional state concern. *WSB Electric, Inc. v. Curry,* 88 F.3d 788, 791 (9th Cir. 1996).

While federal law is the supreme law of the land, U.S. Const. art. VI, cl.2, congressional intent to preempt state laws in areas traditionally occupied by the states must be clear and manifest. *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990). In analyzing the Supremacy Clause, "we start with the assumption that the historic police powers of the states [are] not to be superseded by the Federal Act unless that [is] the clear and manifest purpose of Congress." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Wages are an area of traditional state concern. *WSB Electric, Inc., supra.* State law is preempted by federal law only under three circumstances: (1) where Congress expressly delineates the extent to which state law is superseded (express preemption); (2) where state law impinges on areas that Congress intended to reserve exclusively for federal dominion (field preemption); and (3) where state law is an obstacle to the purposes of federal law, or where compliance with state law results in noncompliance with federal law (conflict preemption). *California v. ARC Am. Corp.*, 490 U.S. 93, 100-101 (1989).

The Court noted that the FLSA does not "automatically" preempt state claims. *Sorensen,* 2004 U.S. Dist. LEXIS 3729 at *19-20. Certainly it is clear that no express statutory language precludes Plaintiff's unjust enrichment claim. Nor can it be said that Congress intended the FLSA to occupy the field. *Williamson,* 208 F.3d at 1151. The Supreme Court has expressly held that in enacting the FLSA, Congress did not make it coextensive with the limits of its power under the *Commerce Clause*; Congress therefore chose not to enter areas which it might have occupied. *Allen v. WTD Indus.,* 2000 U.S. Dist. LEXIS 22382, *7 (D. Ore. 2000), citing *Overstreet v. North Shore Corp.,* 318 U.S. 125, 128, 87 L. Ed. 656, 63 S. Ct. 494 (1943). There is, therefore, no "field" preemption.[6]

Thus, only the two strands of conflict preemption remain to bar Plaintiff's claim. Neither, however, do so. Plaintiff's unjust enrichment claim is no impediment to the accomplishment of the congressional goal of minimum wages and maximum hours. The FLSA permits an employer to pay sub-minimum wages to "tipped" employees, but tips are excluded from wages. 29 U.S.C. §531.60. Thus, tips received by employees in excess of the tip credit are not included as part of the regular rate for overtime computation. *Id.* The regulations define conditions for taking the tip credit (§531.51); the definition and characteristics of tips (§531.52)

---

[6]The presence of the FLSA's savings clause, 29 U.S.C. 218(b), is further evidence the Congress did not intend the Act to occupy the field. *Allen,* supra, 2000 U.S. Dist. LEXIS 22382, *7.

and what payments are not tips (§531.55); and what constitutes permissible tip pooling (§ 531.54). But all these provisions, and those of the Act, address tips only to the extent it affects the ability of the employer to take a credit toward wages payable for tips received. The Act thus addresses tips to a limited extent: only in relationship to the *wages* that an employer must pay.

Like state fraud claims and FLSA claims at issue in *Williamson*, there is no conflict preemption between Plaintiff's unjust enrichment and FLSA claims because allowing Plaintiff's unjust enrichment claim to proceed is not an "an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Allen*, 2000 U.S. Dist. LEXIS 22382, *7. Rather, the unjust enrichment claim is a complement to those objectives and fully consistent with the goals of the FLSA by allowing Plaintiff to recover the money he claims was illegally retained by Defendants, but which Plaintiff's minimum wage claims do not provide a mechanism to recover.

Further, there is no Hobson's choice between meeting the obligations of the FLSA and the state law claim. Indeed, it is *only because* Defendants violated the FLSA that Plaintiff can state the unjust enrichment claim at all.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion for Summary Judgment and grant Plaintiff's Motion for Summary Judgment on Liability with Respect to his FLSA, IMWL, and Unjust Enrichment Claims.

Respectfully submitted,

Dated:  October 31, 2006

Douglas M. Werman
Werman Law Office, P.C.
77 W. Washington, Suite 1815
Chicago, Il 60602
(312) 419-1008

Attorneys for Plaintiff

# CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of **Plaintiff's Response In Opposition to Defendants' Motion for Summary Judgment** was served via electronic mail on November 1, 2006  to:

Todd Church
Perkins Coie, LLP
131 South Dearborn St., Ste. 1700
Chicago, IL  60603

Paul J. Andre
Perkins Coie, LLP
101 Jefferson Drive
Menlo Park, CA 94025

s/Douglas M. Werman
Douglas M. Werman